IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                 No. 10 CR 2626 WJ

PEDRO LEONARDO MASCHERONI,

        Defendant.

## DR. MASCHERONI'S RESPONSE TO THE
## UNITED STATES' SENTENCING MEMORANDUM

"The function of law enforcement is the prevention and apprehension of criminals. Manifestly, that function does not include the manufacturing of crime." Chief Justice Earl Warren in *U.S. v. Sherman,* 356 U.S. 369, 372 (1958).

COMES NOW the defendant by and through counsel, and pursuant to U.S. Const. Amend. V, 18 U.S.C. § 3553(a), and applicable statutes and rules, responds to the "United States Sentencing Memorandum as to Defendant Pedro Leonardo Mascheroni, also Known as 'Luke'" (Doc. #554) as follows:

    1.    **The government's role in the offense conduct**:  The government glosses over its role in the offense conduct in this case. It is important not to lose sight of the elements of entrapment present in this matter. While not amounting to a perfect defense, it is appropriate for the court to consider elements of entrapment present in a case in reaching its sentencing decision. *U.S v. Beltran,* 571 F.3d 1013, 1018-20 & fn. 1 (10th Cir. 2009). Rather than dedicating the formidable resources of the FBI to detecting and

apprehending real spies, the government spent its time creating a pretend one. Anyone who has spent time with Dr. Mascheroni knows that he is completely and hopelessly obsessed with correcting the errors he perceives in the National Laboratories' pursuit of nuclear fusion energy. This obsession has controlled his life since he lost his security clearance and was laid off from the National Laboratories in 1988. Providing Dr. Mascheroni with a willing, receptive, well funded, and non-critical audience for his scientific theories was the functional equivalent of providing crack to a cocaine addict.

2.      The government somehow became aware of Dr. Mascheroni's attempts to contact Venezuelan authorities to seek funding for his scientific proposals. Rather than put a stop to this endeavor, and despite the fact that Dr. Mascheroni has no prior criminal record, the government decided to see if they could get Dr. Mascheroni to commit a crime. They provided him the means and the opportunity to commit crimes. Dr. Mascheroni was dumb enough to take the bait. Starting in March 2008, an undercover FBI agent posing as an intelligence operative of the Republic of Venezuela named "Jimenez" cultivated and recruited Dr. Mascheroni to assist Venezuela in developing a nuclear weapons program. Dr. Mascheroni and his wife were monitored throughout the meetings with the undercover agent. Their phones were tapped, their car was bugged and they were kept under regular surveillance. These conversations culminated in several "dead drop" deliveries of "classified material" to Jimenez. The meetings, phone calls and exchanges continued for over a year from 2008 to 2009.

3.      The government goes to great lengths in its Sentencing Memorandum to

detail the potential importance of the information provided by Dr. Mascheroni to the government and the horrible consequences that might have resulted from that disclosure. It is important to remember, however, that all of the harms described by the government are potential or hypothetical harms. Dr. Mascheroni and his wife were constantly under the surveillance if not the control of government agents. The government has presented scant evidence to suggest that Dr. Mascheroni was pursuing this course of conduct before the opportunity was presented to him by "Jimenez." Amidst the vituperative rhetoric directed towards Dr. Mascheroni it would be comforting to think that the government has paused to reflect on the wisdom or morality of spending taxpayer dollars to induce citizens to commit crimes. The government acknowledges only the role of Dr. Mascheroni in the offense conduct in this case. One wonders how much the government has spent on this made up endeavor. However much the government has spent to date, it is now asking this Court to obligate the people of the United States to pay an additional $2,400 per month to incarcerate Dr. Mascheroni for 66 months.

4.      In the plea agreement, the government agreed to a sentence of 24 to 66 months. At this point in this case, the government's argument boils down to "we tricked this guy into committing a bunch of crimes, now you should lock him up for 66 months." The Court should decline this invitation. A sentence of 24 months is sufficient considering Dr. Mascheroni's age, and the facts and circumstances of this case.

5.      **18 U.S.C. § 1001 means "gotcha."**   The intent of 18 U.S.C. § 1001 is to protect the government from the affirmative, aggressive and voluntary actions of persons

who take the initiative to mislead the government, and to protect the government from being the victim of positive statements which have the tendency and effect of perverting normal and proper government activities and functions. *U.S. v. Dunne*, 324 F.3d 1158, 1165 (10th Cir. 2003).

6.      While technically proper, the government used 18 U.S.C. § 1001 in this case to manufacture additional criminal offenses.  This use of 18 U.S.C. § 1001 has been criticized by two justices of the Supreme Court.  *U.S. v. Brogan,* 522 U.S. 398, 408-418 (1998)(Ginsburg and Souter dissenting)("Although today's decision holds that such prosecutions can be sustained under the broad language of § 1001, the Department of Justice's prosecutorial guide continues to caution restraint in each exercise of this large authority." 552 U.S. at 415).  Government agents approached Dr. Mascheroni at his home in October 2009.  Rather than informing him that the individual he knew as "Jimenez" was an undercover government agent and that the government had bugged his house, vehicles, and phones and had recorded all of his conversations with Jimenez, the government, once again, set about trying to see if they could trap Dr. Mascheroni into committing more crimes.  This was yet another exercise in manufacturing criminal charges, rather than an attempt to protect the government from false statements.  Dr. Mascheroni did not seek out this conversation with the government, rather the government went to his house and, once again, tried to see how far they could get him to go in committing offenses.

7.      **Secret is what we say it is.**  "Classified information does not lose its status

as classified information just because it may happen to appear on the internet." U.S.' Sentencing Memorandum, Doc # 554, p. 19, footnote 24. While this Orwellian definition finds support in federal statutes and regulations, it is, nonetheless, nonsensical and illogical. If your secrets are on the internet they are not secret anymore. Dr. Mascheroni pled guilty to improperly possessing government secrets and to distributing government secrets to the government. While not technically relevant at this stage of the case, Dr. Mascheroni maintains that he scrupulously and painstakingly sourced all of the information he distributed from publicly available materials.

8.      Dr. Mascheroni lost his security clearance and left the National Laboratories in 1988. Either the science of nuclear fusion has made remarkably little progress in the last 20 years or Dr. Mascheroni's information was dated and fragmentary. Or, as Dr. Mascheroni has always contended, the information he provided was publically available on the internet. The government seems to proceed from the assumption that the National Laboratories are the only source of information regarding nuclear weapons, nuclear fusion, and nuclear research in the world. This is not the case. Eight nations possess nuclear weapons.[1] Nuclear physics, nuclear engineering, and nuclear science are taught at major universities throughout the world. In this age of international scientific seminars and symposia, tech transfers, and instant access to data and information on the internet, the world is awash in information regarding nuclear fusion and nuclear weapons.

---

[1] The United States, Russia, the United Kingdom, France and China possess nuclear weapons. India, Pakistan and North Korea have conducted nuclear tests. In addition, Israel is widely believed to possess nuclear weapons. South Africa had nuclear weapons but disassembled its arsenal.

Much of this information has been publically posted by U.S. government scientist or U.S. government laboratories. One has to pity the "classifiers" whose job it is to hold back the tide of information washing around us. To mix a metaphor, their job is to constantly try to "put the genie back in the bottle."

9.     While, as evidenced by his guilty plea, Dr. Mascheroni clearly exercised poor judgment and violated his legal obligations regarding classified information, a legitimate dispute seems to exist between experts about the utility and value of the information he provided to the government. Issues of secrecy and classification make it almost impossible for the layman to sort out the conflicting opinions in the attachments to the parties' sentencing memoranda regarding this aspect of the case. In the end, the information at issue was disclosed only to the government and remains confidential and in the control of the court and the government.

10.     **The history and characteristics of the accused**:  The government spends approximately nine pages of its Sentencing Memorandum cataloging defects in Dr. Mascheroni's character. The portrait that emerges is the same one the defense has presented to the Court:  Dr. Mascheroni is a difficult and obnoxious individual who has only a tentative relationship with reality. He is narcissistic, dishonest, insufferable, obsessive, and he is a foreigner. Thankfully, none of these traits are a proper basis for imposing sentence. Dr. Mascheroni clearly suffers from some cognitive deficit or dissonance.  He is possessed of a fragile ego that requires constant reenforcement. While he may, at one point, have been a functional adult - earning a Ph.D., marrying, raising a

child, holding a job - that time in his life has long passed.  He has been unemployed for more than 20 years.  He has caused immense suffering to those who love him.  While his professional accomplishments seem to evince some level of native intelligence, he has no emotional intelligence whatsoever.  He is a ruined 79 year old man who is spending and will spend his golden years either in prison or under federal supervision.  In the end, he is a sad isolated little man - more to be pitied than feared.

11.     The government negotiated strict conditions of supervision in this case in order to protect the public from further potential misdeeds of Dr. Mascheroni.  This supervision will last 10 years.   Dr. Mascheroni has no criminal history.  Assuming that the government does not further endeavor to get him to commit crimes, he is not likely to be a danger to anyone.  A sentence of 24 months plus ten years' supervised release is sufficient but not greater than necessary to satisfy the purposes of federal sentencing.

WHEREFORE, the defendant respectfully requests this Court to impose a sentence of 24 months imprisonment and for such other and further relief as the Court deems proper.

I HEREBY CERTIFY THAT on the
20th  day of January, 2015, I filed
the foregoing electronically through the
CM/ECF system, which caused opposing
counsel to be served by electronic
means, as more fully reflected on the
Notice of Electronic Filing.


_____*filed electronically*_____

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
111 Lomas NW, Suite 501
Albuquerque, NM 87102
(505) 346-2489

_____*filed electronically*_____
STEPHEN P. McCUE, FPD
Attorney for Dr. Mascheroni