**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA

     Plaintiff,

     v.
                                        No. 10-CR-02626-WJ
                                           No. 16-CV-01239-WJ-SMV

PEDRO LEONARDO MASCHERONI,

     Defendant.

<u>MEMORANDUM OPINION AND ORDER</u>

     This matter is before the Court on Defendant Pedro Leonardo Mascheroni's Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, or Correct Sentence By A Person In Federal Custody, filed on November 11, 2016. [CV Doc. 1; CR Doc. 579] Defendant seeks to vacate his conviction and sentence, alleging that he received ineffective assistance of counsel in the negotiation of his plea agreement. The Government filed its response on March 13, 2017, contending that Defendant's "motion should be summarily denied, without a hearing, because his claims are waived by his knowing and voluntary collateral attack waiver and, even if not waived, his conclusory, self-serving, and speculative motion fails to establish that his experienced team of lawyers provided constitutionally inadequate representation." [CV Doc. 7 at 1; CR Doc. 592 at 1] The Court, having reviewed the briefs,[1] the record, and the relevant law, concludes that an evidentiary hearing is not required. For the reasons explained below, Defendant's § 2255 motion is denied, a certificate of appealability will not be issued, and judgment shall be entered against Defendant.

## I.    BACKGROUND

---

[1] Defendant filed an untimely reply brief on June 17, 2017 [*see* CV Doc. 13; CR Doc. 593], which the Court has declined to consider because Defendant failed to establish excusable neglect for the untimely filing as required by Fed. R. Civ. P. 6(b)(1)(B) [CV Doc. 15; CR Doc. 594].

This case has a long and complex procedural and factual history, which will be summarized herein only to the extent necessary to review the merits of Defendant's § 2255 motion. Defendant, formerly a Ph.D. scientist employed by the Los Alamos National Laboratory's (LANL) nuclear weapons division, was charged by Indictment on September 16, 2010 as follows: (1) Count 1 – conspiracy to communicate restricted data in violation of 42 U.S.C. §§ 2274(a), 2014; (2) Counts 2 and 3 – aiding and abetting the communication of restricted data in violation of 42 U.S.C. §§ 2274(a), 2014 and 18 U.S.C. § 2(a); (3) Count 4 – conspiracy to participate in the development of an atomic weapon in violation of 42 U.S.C. §§ 2122, 2272(b), 2014; (4) Count 5 – aiding and abetting an attempt to participate in the development of an atomic weapon in violation of 42 U.S.C. §§ 2122, 2272(b), 2014 and 18 U.S.C. § 2(a); (5) Count 6 – conspiracy to sell, convey, or convert restricted data in violation of 18 U.S.C. § 371; (6) Counts 7 and 8 – aiding and abetting the conveyance or sale of restricted data in violation of 18 U.S.C. §§ 641 and 2(a); (7) Count 9 – retention and conversion of restricted data in violation of 18 U.S.C. § 641; and (8) Counts 10 - 15 – false, fictitious, or fraudulent statement or representation in violation of 18 U.S.C. § 1001(a)(2). [CR Doc. 2] Attorneys Amy Sirignano and Kirtan Khalsa were appointed to represent Defendant pursuant to the Criminal Justice Act. [CR Docs. 14, 48] On April 6, 2011, the Court permitted Attorney Sirignano to withdraw and substituted Robert Cooper as lead counsel for Defendant. [CR Docs. 116, 117]

On November 10, 2010, the Government filed a Motion for Protective Order, asking the Court to enter an order that "essentially requires that any party receiving materials as part of the discovery process be limited to using those materials solely for legitimate litigation purposes." [CR Doc. 50 at 1-2] The Government indicated that the proposed protective order does "not apply to materials being marked as classified" and that the security, protection, and handling of classified

materials would be addressed through a separate protective order under the Classified Information Procedures Act (CIPA). [CR Doc. 50 at 1 n.2] Defendant, through his counsel Attorneys Sirignano and Khalsa, opposed the Government's "unprecedented request for an umbrella protective order restricting Dr. Mascheroni's and his counsel's use of all of the non-classified discovery information for which CIPA does not mandate a heightened level of protection." [CR Doc. 54 at 2]

On November 13, 2011, the Government moved for a protective order pursuant to CIPA, 18 U.S.C. App. 3 § 3 and Fed. R. Crim. P. 16(d)(1), "to prevent the disclosure of classified and other sensitive information." [CR Doc. 171] Defendant, through his counsel Attorneys Cooper and Khalsa, opposed the proposed protective order as "vague, overly broad, burdensome and unconstitutional." [CR Doc. 179] On February 9, 2012, the Court overruled Defendant's objections and adopted the Government's proposed protective order, with some modifications. [CR Doc. 205] Defendant, through his counsel Attorneys Cooper and Khalsa, moved for reconsideration of the Court's adoption of the CIPA protective order, contending in relevant part that it placed "defense counsels' self-interests in conflict with the representation of their client," because "counsel are necessarily preoccupied with their potential criminal exposure and the scope of their contractual obligations." [CR Doc. 219 at 14] Defendant's motion for reconsideration was denied on March 23, 2012. [CR Doc. 229]

The CIPA protective order required Defendant and his counsel to execute and file with the Court a Memorandum of Understanding (MOU) in order to gain access to the classified discovery. [CR Doc. 230 at ¶ 17] On April 25, 2012, the Government filed an unopposed motion for a status conference, given the failure of Defendant's counsel to execute the MOU. [CR Doc. 235] On June 8, 2012, Defendant, through his counsel Attorneys Cooper and Khalsa, moved to modify the CIPA protective order "to include current updated DOE policy regarding the 'no comment' policy

pertaining to the handling, storage and use of publicly available open source information that may contain classified information." [CR Doc. 261 at 1]

In an opinion issued on January 10, 2013, the Court denied Defendant's motion to modify the CIPA protective order and ordered Defendant and his counsel to sign the MOU. [CR Doc. 347] The Court noted that it would "appoint new CJA counsel if counsel do not immediately sign the MOU so that this case can move forward." [CR Doc. 347 at 7] The Court further noted that if Defendant "continues to refuse to sign the MOU" he cannot view or discuss with his counsel any of the classified or potentially classified discovery. [CR Doc. 347 at 7] The next day, on January 11, 2013, Attorneys Khalsa and Cooper signed and filed the MOU, followed by Defendant on January 31, 2013. [CR Docs. 348, 355]

On May 7, 2013, Attorney Cooper filed a motion seeking the immediate appointment of "independent CJA counsel to advise Defendant Pedro Leanoardo Mascheroni concerning a conflict of interest between undersigned defense counsel and Pedro Leonardo Mascheroni." [CR Doc. 398] The Court appointed the Federal Public Defender "to advise the defendant on matters surrounding a possible conflict of interest between defendant and his current counsel." [CR Doc. 405] The limited appointment of the Federal Public Defender did not "relieve current CJA appointed defense counsel from their full obligations with regard to the representation of [Defendant] or extend those obligations to the Federal Public Defender." [CR Doc. 405]

On June 21, 2013, Defendant was charged by Information with the following additional crimes: (1) Counts 1 and 2 – communication of restricted data in violation of 42 U.S.C. §§ 2274(b), 2014 and 18 U.S.C. § 2(a); and (2) Count 3 – retention of national defense information in violation of 18 U.S.C. § 793(e). [CR Doc. 414] On that same date, Defendant, through his counsel Cooper and Khalsa, as well as independent counsel, Assistant Federal Public Defender Richard

4

Winterbottom, entered into a plea agreement with the Government. [CR Doc. 417] Pursuant to the plea agreement, Defendant agreed to plead guilty to Counts 7, 8, and 10 through 15 of the Indictment, as well as Counts 1 through 3 of the Information. [CR Doc. 417 at 2] The plea agreement provides that "Defendant has thoroughly reviewed all aspects of this case with the Defendant's attorneys and is fully satisfied with his attorneys' legal representation," that Defendant's "guilty pleas are freely and voluntarily made and are not the result of force, threats, or promises," and that Defendant "is pleading guilty because the Defendant is in fact guilty." [CR Doc. 417 at 1, 29] The plea agreement contains a lengthy admission of facts, spanning twelve pages, in which Defendant admitted to the factual basis for each of the crimes to which he agreed to plead guilty. [CR Doc. 417 at 4-16] The parties agreed, pursuant to Fed. R. Crim. P. 11(c)(1)(C), that Defendant "shall be sentenced to the custody of the Bureau of Prisons for a term of not less than 24 months or more than 66 months, such terms to run concurrent to each other." [Doc. 417 at 16-17] Lastly, Defendant's plea agreement contained a waiver of appeal rights, which provides as follows:

> The Defendant is aware that 28 U.S.C. § 1291 and 18 U.S.C. § 3742 afford a defendant the right to appeal a conviction and the sentence imposed. Acknowledging that, the Defendant knowingly waives the right to appeal the Defendant's convictions and sentences, except to the extent, if any, that the Court may impose a sentence that differs from that agreed to by the parties under Federal Rule of Criminal Procedure 11(c)(1)(C). The Defendant further waives any right he may have to additional disclosures from the United States in connection with Defendant's guilty pleas. In addition, the Defendant agrees to waive any collateral attack to the Defendant's convictions and sentences pursuant to 28 U.S.C. §§ 2241 or 2255, or any other writ, except on the issue of counsel's ineffective assistance in negotiating or entering this plea or this waiver.

[CR Doc. 417 at 28]

Concurrent with the entry of the plea agreement, Defendant also executed a Waiver and

Consent To Proceed With Counsel After Receiving Independent Advice Concerning Possible Future Conflict of Interest. [CR Doc. 416] In the waiver, Defendant stated that "on May 6, 2013, an issue arose for the first time that I understand may develop into Mr. Cooper and Ms. Khalsa possibly having a conflict of interest with me in the future." [CR Doc. 416 at 2] Defendant acknowledged that Attorney Winterbottom had been appointed as independent counsel to advise him about the possible future conflict of interest and that he had "discussed and reviewed every part of this Waiver and Consent," as well as the future possible conflict of interest, with Attorney Winterbottom. [CR Doc. 416 at 2, 3] Defendant did not believe that a conflict of interest existed, but "[i]f the Court were to find that Mr. Cooper and Ms. Khalsa somehow have a conflict of interest at this point in time, it is my wish to, and I do, waive any conflict of interest that may exist and I consent to Mr. Cooper and Ms. Khalsa continuing to represent me in this matter for the plea I am about to enter." [CR Doc. 416 at 3] Defendant affirmed that he "want[s] to plead guilty" and that his "decision to plead guilty has nothing to do with, and has not been influenced by the conflict of interest issue that is the subject of this document." [CR Doc. 416 at 3] Defendant further affirmed that he executed the waiver "knowingly, intelligently, and voluntarily" and that "[n]o one has forced me to make this waiver or to consent nor has anyone threatened me or otherwise induced me to make this waiver or to consent." [CR Doc. 416 at 3]

On June 21, 2013, the Court conducted a plea hearing, at which Defendant was represented by Attorneys Cooper, Khalsa, and Winterbottom. [CR Doc. 452] During the plea colloquy, the Court asked Defendant whether he was "satisfied with the legal counsel, legal representation, and legal advice given to you in this case by your counsel, Mr. Cooper, Ms. Khalsa, and then special counsel Mr. Winterbottom" and Defendant responded that he "enjoyed one of them more than the others, but I am going to keep it private. I like them all." [CR Doc. 452 at 7] The Court asked

Defendant whether he had "had an opportunity to read and discuss" the Waiver and Consent To Proceed With Counsel After Receiving Independent Advice Concerning Possible Future Conflict of Interest "with Mr. Winterbottom before [he] signed it" and Defendant responded "Yes." [CR Doc. 452 at 7-8] The Court also asked Defendant whether he understood the contents of the waiver and Defendant responded "Yes." [CR Doc. 452 at 8]

With respect to the plea agreement, Defendant affirmed under oath that he had read and discussed the plea agreement with his defense counsel and that he understood the plea agreement. [CR Doc. 452 at 9] Defendant stated that the decision to plead guilty was "[v]ery painful, very difficult," but that it was his "own decision" that he had made voluntarily after consulting with counsel. [CR Doc. 452 at 10] Defendant admitted to the factual basis of the plea and the Court informed Defendant of his constitutional rights, including his right to have a jury trial. Defendant assured the Court that he understood his rights and that he had decided, after consultation with Attorneys Cooper and Winterbottom, that it was in his best interest to plead guilty. [CR Doc. 452 at 20] Thereafter, Defendant pleaded guilty and the Court found Defendant's guilty plea to be "a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offenses." [CR Doc. 452 at 25] The Court accepted Defendant's guilty plea and adjudicated him guilty of the offenses listed in the plea agreement. [CR Doc. 452 at 25]

Approximately two and a half months after the entry of Defendant's guilty plea, Attorneys Cooper and Khalsa moved to withdraw as counsel for Defendant, because the relationship between Defendant and "counsel ha[d] deteriorated to the point that continued representation of Dr. Mascheroni cannot be achieved without substantial and irreparable impairment to Dr. Mascheroni's rights and interests in this matter." [CR Doc. 443 at 1] Following a hearing, the Court found that "there had been a total breakdown in communication" between Defendant and

Attorneys Cooper and Khalsa, despite the "best efforts" of Attorneys Cooper and Khalsa, and that Defendant had "substantially and unreasonably contributed to the communication breakdown." [CR Doc. 504 at 2] The Court granted the motion to withdraw in part, allowing Attorneys Cooper and Khalsa "to withdraw from active representation of Defendant," but to "remain available on a standby basis in light of counsel's substantial institutional knowledge of this case." [CR Doc. 504 at 2] The Court ordered Defendant's case to "proceed to sentencing, and that Mr. Richard Winterbottom will continue to represent Defendant as substitute counsel for purposes of sentencing." [CR Doc. 504 at 2]

On July 22, 2014, Defendant, through his counsel Attorney Winterbottom, moved to withdraw his guilty plea. [CR Doc. 520] The Court declined to hold an evidentiary hearing on Defendant's motion, because "there is a well-developed record which supports the Government's contention that Defendant's efforts to negate the guilty plea he entered into are conclusory and inconsistent with statements he made during the plea colloquy." [CR Doc. 526 at 4] The Court found that there was not a fair and just reason to permit Defendant to withdraw his guilty plea, since he could not make a credible claim of innocence, his guilty plea was knowing and voluntary, and he had received quality assistance of counsel. [CR Doc. 526] The Court further found that withdrawal of Defendant's guilty plea would prejudice the Government, inconvenience the Court, and waste judicial resources. [CR Doc. 526] Therefore, the Court denied Defendant's motion to withdraw his guilty plea. [CR Doc. 526]

On January 28, 2015, the Court conducted a sentencing hearing, at which the Government presented videotaped evidence of Defendant's guilt and Defendant had an opportunity to present evidence and address the Court. [CR Doc. 572; *see also* CR Doc. 554] After hearing all of the evidence, the Court sentenced Defendant to the custody of the Bureau of Prisons for a term of 60

months as to each Counts 7 and 8 of the Indictment, Counts 1 through 3 of the Information, and Counts 10 through 15 of the Indictment, said terms to run concurrently, for a total term of 60 months. [CR Doc. 558, 564] The Court also imposed a term of 3 years of supervised release as to each Counts 7, 8, and 10 through 15 of the Indictment, and Counts 1 through 3 of the Information, said terms to run concurrently for a total term of 3 years. [CR Doc. 564 at 5] The Court rendered judgment on Defendant's convictions and sentence on January 29, 2015. [CR Doc. 564]

Defendant appealed to the United States Court of Appeals for the Tenth Circuit, which dismissed Defendant's appeal in light of the waiver of appellate rights in the plea agreement. [CR Doc. 576; *see United States v. Mascheroni*, 612 F. App'x 504 (10th Cir. 2015) (per curiam)] Specifically, the Court of Appeals determined that "[t]he substantial evidence of the plea agreement and colloquy . . . establishes that his plea was knowing and voluntary." [CR Doc. 567-1 at 5] The Court noted that:

> Dr. Mascheroni, who has a Ph.D. and is a former scientist at Los Alamos National Laboratory nuclear weapons division, signed the plea agreement, which stated that he freely and voluntarily entered his plea and that he had reviewed it with counsel. Furthermore, the district court engaged him in a proper plea colloquy to make sure he understood what the plea agreement entailed. He admitted reading and discussing the plea agreement at length with counsel, voluntarily entering into the plea agreement, understanding the maximum possible penalties for the offenses to which he was pleading and the penalties covered in the plea agreement, and understanding that he waived his right to appeal his sentence. In addition, at the colloquy, he admitted the lengthy stipulation of facts contained in the plea agreement, and counsel stated that they had spent considerable amount of time with Dr. Mascheroni concerning the facts stated in the plea agreement and were satisfied that he understood the factual recitations. Under the circumstances, we conclude that this "properly conducted plea colloquy . . . [is] conclusive on the waiver issue, in spite of [Dr. Mascheroni's] post hoc assertions to the contrary."

[CR Doc. 576-1 at 5-6] The Court of Appeals rejected Defendant's contention that enforcement of

the appeal waiver would result in a miscarriage of justice and noted that Defendant's claim that "his plea was not knowing and voluntary due to alleged ineffective assistance of counsel and counsel's alleged conflict of interest" must be raised "in a collateral proceeding under 28 U.S.C. § 2255, not on direct appeal." [CR Doc. 576-1 at 4, 6-7] Therefore, the Court of Appeals dismissed Defendant's appeal without prejudice to his right to raise a claim of ineffective assistance of counsel in a collateral proceeding. [CR Doc. 576-1 at 7]

On November 10, 2016, Defendant filed the present § 2255 motion. [CR Doc. 579; CV Doc. 1] In his § 2255 motion, Defendant contends that he received ineffective assistance of counsel in negotiating and entering into the plea agreement. Specifically, Defendant raises five claims of ineffective assistance of counsel in negotiating and entering into the plea agreement: (1) Attorneys Cooper and Khalsa labored under a conflict of interest that adversely affected their performance and caused prejudice to Defendant; (2) Attorney Winterbottom rendered ineffective assistance of counsel in negotiating and entering into the plea agreement, because he did not review the classified and unclassified discovery, he was unfamiliar with the relevant law, and he failed to advise Defendant that his "sentencing would be open, or that [Defendant] would not be allowed to return to the secure room to prepare for his allocution"; (3) Attorneys Cooper and Khalsa rendered ineffective assistance of counsel because they failed to challenge the Indictment, interview key witness, and delayed review of the classified discovery for "two full years after the indictment"; (4) Attorneys Cooper and Khalsa rendered ineffective assistance of counsel because they failed to challenge the Government's "production of nearly 5.8 terabytes of electronic discovery, in a non-native, non-searchable and duplicative format"; and (5) Defendant's attorneys rendered ineffective assistance of counsel because they failed to file a motion to suppress "all FISA collected evidence, thereby materially altering Defendant's decision to enter into a plea."

[CR Doc. 579; CV Doc. 1] Attached to Defendant's § 2255 motion is Defendant's twenty-page affidavit, which details the alleged conflict of interest between Defendant and Attorneys Cooper and Khalsa and the alleged defects in the legal representation provided by Attorneys Cooper, Khalsa, and Winterbottom.   [CV Doc. 1-1; CR Doc. 579-1]

## II.    DISCUSSION

The Court first will address whether an evidentiary hearing is required on Defendant's § 2255 motion and then will proceed to consider the merits of Defendant's ineffective assistance of counsel claims.

### A.    *An Evidentiary Hearing Is Not Required*

Title 28 of the United States Code, section 2255 provides that the District Court shall hold an evidentiary hearing on a defendant's § 2255 motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Under § 2255(b), an evidentiary hearing is not "required where the district court finds the case record conclusively shows the prisoner is entitled to no relief." *United States v. Marr*, 856 F.2d 1471, 1472 (10th Cir. 1988). When a defendant raises an ineffective assistance of counsel claim in a § 2255 proceeding, he "bears the burden of alleging facts, which if proved, would entitle him to relief." *Hatch v. State of Oklahoma*, 58 F.3d 1447, 1457 (10th Cir. 1995) (internal quotation marks and citation omitted), *overruled on other grounds by Daniels v. United States*, 254 F.3d 1180, 1188 n.1 (10th Cir. 2001). "Moreover, his allegations must be specific and particularized; conclusory allegations will not suffice to warrant a hearing." *Id.* (internal quotation marks and citation omitted).

Although Defendant alleges that his attorneys rendered ineffective assistance of counsel by failing to review the classified discovery, familiarize themselves with the relevant law, interview

11

key witnesses, challenge the Indictment, object to the volume of the electronic discovery, or file motions to suppress, his "allegations are merely conclusory in nature and without supporting factual averments." *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994). Stated simply, Defendant fails to identify, with particularity, the mitigating evidence that his attorneys failed to uncover or the legal basis on which his attorneys successfully could have moved to challenge the Indictment, the electronic discovery, or the evidence. *See United States v. Cervini*, 379 F.3d 987, 994 (10th Cir. 2004) ("District Courts are not required to hold evidentiary hearings in collateral attacks without a firm idea of what the testimony will encompass and how it will support a movant's claim."). Lastly, although Defendant alleges that Attorneys Cooper, Khalsa, and Winterbottom rendered ineffective assistance of counsel in connection with the negotiation of the plea agreement and waiver, his self-serving factual allegations are contradicted by the record, are inherently incredible, and do not entitle him to relief. *See Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (holding that "no hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact") (internal quotation marks and citations omitted); *United States v. Sanchez*, No. 96-7039, 1997 WL 8842, at *3 (10th Cir. January 10, 1997) (holding that the "defendant's conclusory allegations regarding the plea agreement terms, which contradict the record made at the plea hearing, were insufficient to require an evidentiary hearing") (unpublished); *see also Schriro v. Landrigan*, 550 U.S. 465, 481 (2007) (holding that an evidentiary hearing is not required on a 28 U.S.C. § 2254 petition if "[e]ven assuming the truth of all the facts . . . sought to [be] prove[d] at the evidentiary hearing, [the petitioner] still could not be granted federal habeas relief"). Therefore, the Court concludes, after reviewing the extensive record in this case, that an evidentiary hearing is not required.

B.  *Defendant's Ineffective Assistance Of Counsel Claims, Except For Attorneys Cooper's and Khalsa's Alleged Conflict of Interest and Attorney Winterbottom's Alleged Inaccurate Advice Regarding A Closed Sentencing Hearing, Fall Within the Scope Of The Collateral Attack Waiver*

"[A] waiver of collateral attack rights brought under § 2255 is generally enforceable where the waiver is expressly stated in the plea agreement and where both the plea and the waiver were knowingly and voluntarily made." *United States v. Cockerham*, 237 F.3d 1179, 1183 (10th Cir. 2001). In the present case, Defendant agreed to waive his right to collaterally attack his convictions and sentences "pursuant to 28 U.S.C. § 2241 or 2255, or any other writ, except on the issue of counsel's ineffective assistance in negotiating or entering" into the plea agreement or the waiver of his appellate rights. [CR Doc. 417 at 28] Thus, a claim of alleged ineffective assistance of counsel in negotiating or entering into the plea agreement falls outside the scope of the collateral attack waiver. *See also id.* at 1187 (holding that "a plea agreement waiver of postconviction rights does not waive the right to bring a § 2255 petition based on ineffective assistance of counsel claims challenging the validity of the plea or the waiver"). In his § 2255 motion, Defendant claims, consistent with the exception in the collateral attack waiver, that he received ineffective assistance of counsel in negotiating and entering into the plea agreement and waiver.[2]

"For an ineffective assistance of counsel claim to fall within this exception, it must bear more than a tangential relation to the plea agreement waiver." *United States v. Masters*, 317 F. App'x 750, 755 (10th Cir. 2009) (unpublished). The defendant's claim "must specifically

---

[2] Defendant does not, and indeed could not, challenge the validity of his plea agreement and collateral attack waiver as unknowing and involuntary, or allege that the enforcement of the plea agreement and collateral attack waiver would result in a miscarriage of justice, because these claims were raised, considered, and disposed of by the United States Court of Appeals for the Tenth Circuit on direct appeal and, therefore, may not be raised in this § 2255 proceeding. *See Mascheroni*, 612 F. App'x at 507-08 (rejecting on direct appeal Defendant's claim that his plea agreement was unknowing and involuntary, or that enforcement would result in a miscarriage of justice, without prejudice to Defendant's right to raise a claim of ineffective assistance of counsel in a collateral proceeding); *United States v. Warner*, 23 F.3d 287, 291 (10th Cir. 1994) (noting that if an issue has been considered and disposed of on direct appeal, then it may not be raised under § 2255).

'challenge counsel's representation in negotiating or entering the plea or the waiver'" and "assertions of ineffective assistance regarding other aspects of the criminal proceedings against him do not amount to such a claim." *Id.* (quoting *Cockerham*, 237 F.3d at 1187). For example, claims of alleged ineffective assistance in the preparation and litigation of pretrial motions or during sentencing generally "do not qualify as a direct attack pertaining to the validity of the plea." *United States v. Andrews*, 471 F. App'x 824, 828 (10th Cir. 2012) (holding that the alleged ineffective assistance of counsel in relation to Fourth Amendment motions, Speedy Trial Act motions, and grand jury proceedings "fall short of calling the validity of the plea agreement into question") (unpublished); *see also Cockerham*, 237 F.3d at 1185 (distinguishing between "a claim of ineffective assistance of counsel in entering or negotiating the plea versus a claim of ineffectiveness at sentencing"); *United States v. Smith*, 371 F. App'x 901, 904 (10th Cir. 2010) (holding that the defendant's "ineffective assistance of counsel claims, based on his counsel's failure to object to the content of the PSR and to advise [him] regarding his ability to appeal, were within the scope of the waiver because neither claim challenged the validity of the plea or the waiver") (unpublished); *Masters*, 317 F. App'x at 755 (holding that the defendant's claim that he would not have pleaded guilty but for counsel's alleged ineffective assistance in the litigation of a suppression motion "does not reach the requisite level of connection to the plea agreement, i.e., it is not a collateral attack that sufficiently pertains to the validity of the plea") (internal quotation marks and citation omitted) (unpublished); *United States v. Kutilek*, 260 F. App'x 139, 146 (10th Cir. 2008) (noting that the defendant's claim that his attorney was constitutionally ineffective for failing to challenge the allegedly unlawful indictment "does not relate to the negotiation of the plea or waiver") (unpublished).

The Court concludes that Defendant's ineffective assistance of counsel claims, with the

exception of the alleged conflict of interest of Attorneys Cooper and Khalsa and the alleged

inaccurate advice of Attorney Winterbottom regarding a closed sentencing hearing, bear only a

tangential relationship to the plea agreement and waiver. Specifically, Defendant's claims that his

defense counsel erred in failing to challenge the indictment, conduct an investigation or interview

key witnesses, file motions to suppress evidence, file motions to quash the electronic discovery,

timely review the classified and unclassified discovery, or familiarize themselves with the relevant

law do "not reach the requisite level of connection to the plea agreement, i.e., it is not a collateral

attack that sufficiently pertains to the validity of the plea." *Masters*, 317 F. App'x at 755 (internal

quotation marks and citation omitted) (unpublished). Therefore, the Court will not address the

merits of these claims, since they are barred by the collateral attack waiver in Defendant's plea

agreement.

C.     *Attorneys Cooper and Khalsa Did Not Render Ineffective Assistance of Counsel Based on An Actual Conflict of Interest*

Defendant contends that Attorneys Cooper and Khalsa had a conflict of interest because

they did not want to enter into the CIPA protective order, which might subject them to criminal

prosecution, "would force them to work in the SCIF,[3] and would force them to review and prepare

a defense for a case that included classified discovery from the government that was 5.8TB in

size—nearly half the size of the Library of Congress." [CV Doc. 1 at 4] Additionally, in his

affidavit, Defendant alleges that an actual conflict of interest developed between himself and

Attorneys Cooper and Khalsa on or about May 6, 2013, when Attorney Khalsa allegedly

---

[3] The acronym SCIF stands for "sensitive compartmented information facility." *Al-Turki v. Fed. Bureau of Investigations Document Custodian*, No. 06-CV-1076-JLK, 2007 WL 3195129, at *1 n.1 (D. Colo. October 26, 2007) (unpublished).

discovered notes in Defendant's briefcase in the SCIF that contained classified information.[4]

[Doc. 1-1 at 12-13] Because the removal of classified information from the SCIF would result in a

violation of the CIPA protective order, Defendant no longer was allowed access to the SCIF or the

classified discovery and Attorney Winterbottom was appointed to represent Defendant as

independent counsel. [Doc. 1-1 at 13; *see* CR Docs. 396, 398]

"A defendant who argues that an actual conflict prevented his attorney from providing

effective assistance must show[] that his counsel *actively* represented conflicting interests." *United*

*States v. Soto Hernandez*, 849 F.2d 1325, 1329 (1988) (emphasis in original; internal quotation

marks and citation omitted). An actual conflict of interest exists "if counsel was forced to make

choices advancing other interests to the detriment of his client." *United States v. Alvarez*, 137 F.3d

1249, 1252 (10th Cir. 1998). "Without a showing of inconsistent interests, any alleged conflict

remains hypothetical, and does not constitute ineffective assistance." *Id.* "Indeed, to demonstrate

an actual conflict of interest, the petition must be able to point to specific instances in the record

which suggest an impairment or compromise of his interests for the benefit of another party." *Id.*

(internal quotation marks and citation omitted).

---

[4] Defendant denies purposefully attempting to remove classified information from the SCIF, stating alternately and inconsistently, that the notes had "inadvertently fallen into his briefcase," did not contain classified information, and Attorney Khalsa manufactured the whole "incident so she could find reason to keep me out of the SCIF, and prevent the chance I would discover critical evidence which supported my claims regarding my intent." [CV Doc. 1-1 at 13, 14] The Court notes that Defendant's conclusory allegations regarding Attorney Khalsa's alleged role in the incident are completely devoid of supporting factual averments and, therefore, unworthy of belief. *See Luevano v. Holder*, 660 F.3d 1207, 1212-13 (10th Cir. 2011) (holding that an affidavit that that sets forth "no information" and "presents no facts" is insufficient); *David v. United States*, 134 F.3d 470, 478 (1st Cir. 1998) (holding that "the district court was not obliged to credit the petitioner's threadbare allusions to a phantom plea bargain" and "[i]n the absence of any particulars, the lower court justifiably treated the petitioner's conclusory averments as mere buzznacking"). In any event, the Court need not resolve the factual inconsistencies surrounding Defendant's alleged attempt to remove classified information from the SCIF because regardless of how or why the documents ended up in Defendant's briefcase, or even if they did at all, the pertinent fact remains that this incident led to a potential conflict of interest between Defendant and Attorneys Cooper and Khalsa, which for the reasons explained in the body of this Memorandum Opinion and Order, the Court determines that Defendant waived knowingly, intelligently, and voluntarily.

"[A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief," because "[t]he conflict itself demonstrate[s] a denial of the right to have the effective assistance of counsel." *Cuyler v. Sullivan*, 446 U.S. 335, 349-50 (1980) (internal quotation marks and citation omitted). "But until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." *Id.* at 350.

First, Defendant alleges that Attorneys Cooper and Khalsa actively represented conflicting interests because they refused to enter into the CIPA protective order out of fear of exposure to criminal prosecution and because they did not want to work in the SCIF or review the large volume of discovery. [CV Doc. 1 at 16] However, the record reflects that Attorneys Cooper and Khalsa signed the CIPA protective order on January 11, 2013, approximately five months before Defendant entered into the plea agreement on June 21, 2013. [CR Docs. 348, 417] Thus, at the time they negotiated the plea agreement and waiver, Attorneys Cooper and Khalsa already had signed, and were bound by, the terms of the CIPA protective order. Furthermore, according to the recitation of facts in Defendant's affidavit, after the execution of the CIPA protective order, he and Attorneys Cooper and Khalsa "began working together in the SCIF to review the 'classified' discovery." [CV Doc. 1-1 at 10] Thus, to the extent that an alleged conflict of interest may have existed, it was resolved months before Defendant entered into the plea agreement and waiver and, therefore, did not taint the plea negotiations.

Regardless, Defendant fails to demonstrate that the reluctance of Attorneys Cooper and Khalsa to sign the CIPA protective order, work in the SCIF, or review the electronic discovery amounted to more than the mere *possibility* of a conflict of interest, and "the possibility of conflict is insufficient to impugn a criminal conviction." *Cuyler*, 446 U.S. at 350. Attorneys Cooper's and

17

Khalsa's alleged personal interest in being free from possible criminal prosecution, avoiding the inconvenience of working in the SCIF, and circumventing review of the voluminous electronic discovery may have caused "some divisiveness between attorney and client," but "courts generally presume that counsel will subordinate his or her own . . . interests and honor his or her professional responsibility to a client." *United States v. Foy*, 540 F. App'x 828, 831 (10th Cir. 2013) (unpublished) (quoting *Caderno v. United States*, 256 F.3d 1213 (11th Cir. 2001)); *see also United States v. Williamson*, 859 F.3d 843, 852 (10th Cir. 2017) (holding that a *potential* conflict of interest "will only be converted to an *actual* conflict of interest if, over the course of the litigation, the defendant's interests actually clash with his attorney's interest"), *cert. petition filed*, No. 17-6373 (U.S. October 18, 2017). Defendant has failed to allege any specific facts indicating that Attorneys Cooper and Khalsa compromised or impaired Defendant's interests in order to further their own personal interests and, therefore, the Court concludes that he has failed to demonstrate that an actual conflict of interest existed.

Defendant next alleges that a conflict of interest developed on or about May 6, 2013, when Attorney Khalsa discovered notes in Defendant's briefcase that contained classified information. [CV Doc. 1-1 at 12-13] As a result of this discovery, Defendant was no longer permitted access to the SCIF or the classified discovery. [CV Doc. 1-1 at 13] Attorneys Cooper and Khalsa immediately informed the Court of the existence of a potential conflict of interest and the Court appointed Attorney Winterbottom as independent counsel "for the limited purpose of advising the defendant concerning his options in the face of a potential conflict." [*See* CR Doc. 396, 397, 398, 405] Despite the appointment of independent counsel, and despite Defendant's Waiver and Consent To Proceed With Counsel After Receiving Independent Advice Concerning Possible Future Conflict of Interest [CR Doc. 416], Defendant contends that Attorneys Cooper's and

Khalsa's alleged conflict of interest adversely affected "their performance and caused prejudice to" Defendant. [CV Doc. 1 at 4]

"A defendant may waive the right to assistance of counsel unhindered by conflicts of interest." *United States v. Burney*, 756 F.2d 787, 791 n.2 (10th Cir. 1985). Waiver of the right to conflict-free counsel must be knowing, intelligent, and voluntary. *See Edens v. Hannigan*, 87 F.3d 1109, 1118 (10th Cir. 1996). In the present case, the Court promptly appointed independent counsel to advise Defendant concerning the potential conflict of interest. [CR Doc. 405] The record reflects that Defendant "discussed thoroughly" the potential conflict of interest with Attorney Winterbottom and, after this thorough discussion, decided to waive the potential conflict of interest. [CR Doc. 416] Indeed, in his Waiver and Consent To Proceed With Counsel After Receiving Independent Advice Concerning Possible Future Conflict of Interest, Defendant represented that he understood his "right to have conflict-free counsel represent [him] in this case," and wished to and indeed did waive "any conflict of interest that may exist and . . . consent[ed] to Mr. Cooper and Ms. Khalsa continuing to represent" him in connection with the guilty plea. [CR Doc. 416 at 3] In the Waiver, Defendant stated that he "want[ed] to plead guilty" and that his "decision to plead guilty has nothing to do with, and has not been influenced by the conflict of interest." [CR Doc. 416 at 3] Defendant further stated that his waiver was made "knowingly, intelligently, and voluntarily" and that "[n]o one ha[d] forced him to make [the] waiver or to consent nor has anyone threatened [him] or otherwise induced [him] to make [the] waiver or to consent." [CR Doc. 416 at 3] During the plea colloquy, Defendant assured the Court that he was satisfied with his attorneys' performance, that he had read and discussed the Waiver with Attorney

Winterbottom, and that he understood the contents of the Waiver.[5]  [CR Doc. 452 at 7-8]

In light of the appointment of independent counsel, the plain language of the Waiver, and Defendants statements under oath during the plea colloquy, the Court concludes that Defendant knowingly, intelligently, and voluntarily waived his right to conflict-free assistance of counsel in the negotiation of the plea agreement and waiver of appeal rights. In arriving at this conclusion the Court notes that Defendant is a highly intelligent and well-educated individual who actively participated in his defense and who never hesitated to inform the Court of any concerns he might have regarding the adequacy of his legal representation. [*See, e.g.*, CR Doc. 482] There was substantial evidence of guilt in the present case [*see* CR Docs. 554, 572, PSR at 10-21] and the plea agreement conferred a significant benefit on Defendant, reducing his possible sentence from life imprisonment to 24 to 66 months of imprisonment.[6] The Court concludes that Defendant made a knowing, intelligent and voluntary decision to have Attorneys Cooper and Khalsa, as well as Attorney Winterbottom, represent him in negotiating and entering into the plea agreement and waiver. Therefore, Defendant's request for relief based on the alleged conflict of interest with Attorneys Cooper and Khalsa is denied.

D.    *Attorney Winterbottom Did Not Render Ineffective Assistance Of Counsel In Negotiating And Entering Into the Plea Agreement and Waiver*

Defendant next contends that his independent counsel, Attorney Winterbottom, rendered ineffective assistance in negotiating and entering into the plea agreement and waiver. Specifically,

---

[5] The Court notes that it was unaware of the factual circumstances surrounding the possible conflict of interest, or the nature of the possible conflict of interest, at the time of the plea colloquy. [*See* Doc. 548 at 13, 22-41 (May 14, 2014 hearing on Attorneys Cooper's and Khalsa's motion to withdraw as counsel in which the Court learned, for the first time, of "the circumstances of May 6th that gave rise to the conflict")]

[6] Defendant was facing a sentence of life imprisonment based on Count 1 of the Indictment alone. Furthermore, if Defendant had gone to trial and been found guilty, his imprisonment range under the United States Sentencing Guidelines would have been 292 to 365 months. [*See* PSR at 29] By entering into the plea agreement, however, Defendant limited his term of imprisonment to "not less than 24 months nor more than 66 months." [CR Doc. 417 at 16-17]

Defendant alleges that he would not have pleaded guilty but for Attorney Winterbottom's inaccurate advice that he would be allowed "access back into the SCIF and that [he] could prepare a full allocution and present all mitigating evidence [including classified material] to the Judge at the time of Sentencing." [CV Doc. 1-1 at 14]

To demonstrate ineffective assistance of counsel, Defendant must show that his "counsel's representations fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). Defendant pleaded guilty and, therefore, to prevail on his ineffective assistance of counsel claim he must "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Additionally, the defendant must show that "a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).

The plea agreement provides, in relevant part, as follows:

> To help protect against the disclosure of classified information prior to or at sentencing, or while the Defendant serves his sentence, the Defendant agrees that upon the Defendant's signing of this plea agreement and continuing until the Defendant's terms of supervised release have all expired, the Defendant, or anyone representing or acting on the Defendant's behalf, will be bound by the terms of paragraph 9.(a)(iv)(1)-(5) and will not advance any arguments, make any filings, or offer any exhibits or testimony that would require the use of any of the procedures set forth in the Classified Information Procedures Act, 18 U.S.C. App. 3. The Defendant intends to make a statement to the Court at the sentencing hearing in this matter and to present evidence and argument to the Court. The Defendant agrees that he will submit in writing to the Classified Information Security Officer ("CISO") or her designee at least 60 days prior to sentencing any statement, evidence, or argument he intends to make or provide to the Court. The CISO will provide such statement to DOE for a classification review. If DOE determines

that the Defendant's proposed statement, evidence, or argument
contains classified information, DOE will, to the extent possible,
provide the Defendant with a redacted, unclassified version of the
statement, evidence, or argument prior to the sentencing hearing.
The Defendant agrees that he will abide by DOE's classification
decisions and will present to the Court only a statement, evidence,
or argument that has been confirmed by DOE to be unclassified. To
further those protections, the Defendant also agrees that, upon the
Defendant's signing of this plea agreement and continuing until
sentencing in this matter, the Defendant, or anyone representing or
acting on the Defendant's behalf, will have no contact, in whatever
form, with the media. To further help protect against the disclosure
of classified information, the Defendant agrees to provide counsel
for the United States with a redacted, unclassified copy of the
Defendant's statement described above no later than two weeks
prior to the date of the Defendant's sentencing.

[CR Doc. 417 at 26-27] Thus, the plain language of the plea agreement prohibited Defendant from

disclosing classified information at his sentencing hearing. At the plea colloquy, Defendant

affirmed under oath that he had read the plea agreement, discussed the plea agreement at length

with his counsel, and understood its terms. [CR Doc. 452 at 8-9]

Even if the Court were to credit Defendant's assertion that Attorney Winterbottom

provided him with inaccurate advice regarding the disclosure of classified information at his

sentencing hearing, Defendant nonetheless cannot demonstrate prejudice. First, Defendant fails to

identify with particularity the nature of the mitigating evidence that he hoped to find in the

classified discovery. Second, even if Defendant had been permitted to reenter the SCIF, had found

the unidentified information, and had presented it at a closed sentencing hearing, this information

would not have invalidated his plea agreement.   Rather, the purpose of allocution and the

presentation of mitigating evidence at sentencing is "to have your request for mercy factored into

the sentencing decision." *United States v. Barnes*, 948 F.2d 325, 329 (7th Cir. 1991) ("The right to

allocution is the right to have your request for mercy factored into the sentencing decision."). The

Court's authority to bestow mercy upon Defendant was limited by the terms of the Rule 11(c)(1)(C) plea agreement, which required the Court to sentence Defendant to a term of imprisonment of not less than 24 months nor more than 66 months. [CR Doc. 417 at 17] The Court explained the sentencing range to Defendant at his plea colloquy and Defendant assured the Court that he understood that he was facing a minimum sentence of 24 months and a maximum sentence of 66 months of imprisonment. [CR Doc. 452 at 22-25] At the sentencing hearing, Defendant presented mitigating evidence, addressed the Court, and the Court sentenced Defendant to a term of 60 months of imprisonment, consistent with the Rule 11(c)(1)(C) plea agreement. [CR Docs. 550, 572] Defendant's sentence was within the range of imprisonment specified by the plea agreement and he cannot demonstrate prejudice by complaining that he did not receive the lowest possible sentence.

Defendant alleges in his affidavit, however, that he would have insisted on going to trial, but for Attorney Winterbottom's inaccurate advice, because he believed that if he regained access to the classified discovery and presented mitigating evidence at sentencing, then "it was possible that the Judge would decide that the plea was invalid." [CV Doc. 1-1 at 14] Defendant's alleged belief is contradicted by the record and the express terms of the plea agreement. As previously explained, the plain language of the plea agreement explicitly prohibited Defendant from presenting classified information at his sentencing and it further prohibited Defendant from withdrawing "any of his guilty pleas unless, pursuant to Federal Rule of Criminal Procedure 11(c)(5), the Court rejects this plea agreement." [CR Doc. 417 at 25] The Court accepted the plea agreement, after Defendant assured the Court, under penalty of perjury, that he had read the plea agreement, that he understood its terms, that it was his own decision to plead guilty, and that the twelve-page admission of facts "does represent the truth." [CR Doc. 452 at 17, 20] Defendant was

informed of his constitutional rights, including his right to proceed to trial, to present witnesses,

"to testify or not to call any witnesses and to put on any evidence at all," and Defendant agreed to

waive those rights. [CR Doc. 452 at 20-21] In light of the plain language of the plea agreement and

Defendant's sworn statements during the plea colloquy, Defendant's alleged belief that he could

withdraw his guilty plea if he found mitigating evidence in the classified discovery is "wholly

incredible." *Lasiter v. Thomas*, 89 F.3d 699, 703 (10th Cir. 1996) (holding that there is no

prejudice from counsel's innacurate advice "where the court cured the defect by providing the

proper information").

Regardless, the United States Court of Appeals for the Tenth Circuit has stated that it

"remain[s] suspicious of bald, post hoc and unsupported statements that a defendant would have

changed his plea absent counsel's errors." *Heard v. Addison*, 728 F.3d 1170, 1184 (10th Cir.

2013). In determining whether counsel's ineffectiveness was prejudicial, courts must "focus on the

objective evidence" and "ask whether going to trial would have been objectively 'rational under

the circumstances.'" *Id.* "Although a defendant need not show he would have prevailed at trial, his

prospects of succeeding inform [the Court's] view of whether he would have gone to trial." *United

States v. Triplett*, 263 F. App'x 688, 690 (10th Cir. 2008) (unpublished).

The Government's case against Defendant was strong and Defendant was facing a

sentence of life imprisonment on Count 1 of the Indictment alone. [*See* CR Docs. 554, 572, PSR at

10-21, 29; *see also* footnote 5, *supra*] At the time of the plea negotiations, Defendant was in his

seventies, in ill health, and facing the prospect of spending the rest of his natural life in prison.[7] By

pleading guilty, many of the charges against Defendant were dismissed and Defendant was

---

[7] Defendant was seventy-nine years old at the time of sentencing and he suffered from various medical conditions,
including high blood pressure, hyperlipidemia, diabetes, ulcerative colitis, hypertension, hypothyroid, and depression.
[*See* CR Doc. 550 at 7-8]

guaranteed a sentence of no more than 66 months of imprisonment. To reject this beneficial plea agreement, in order to go on a fishing expedition for unknown and unidentified mitigating evidence of intent,[8] would not have been objectively rational under the circumstances. *See United States v. Tuakalau*, 562 F. App'x 604, 609 (10th Cir. 2014) (agreeing with the district court that "rejecting a plea bargain dismissing numerous charges and guaranteeing a thirty-year sentence would not have been rational") (unpublished). Therefore, Defendant's request for relief under § 2255 based on Attorney Winterbottom's alleged ineffective assistance of counsel is denied.

E.     *A Certificate of Appealability Will Be Denied*

Rule 11 of the Rules Governing Section 2255 Proceedings For the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To be entitled to a certificate of appealability, an applicant must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). For the reasons explained in this Memorandum Opinion and Order, the Court finds that reasonable jurists could not debate this Court's denial of Defendant's § 2255 motion and, therefore, a certificate of appealability will be denied.

IT IS THEREFORE ORDERED that Defendant's § 2255 motion is DENIED;

IT IS FURTHER ORDERED that Defendant's request for issuance of a certificate of appealability is DENIED; and

---

[8] Presumably Defendant was aware of his own intent and, therefore, the best evidence of Defendant's intent already was in his possession at the time of his plea. *See United States v. Bishop*, 291 F.3d 1100, 1110 (9th Cir. 2002) (holding that "[t]he best evidence" of the defendant's intent "would be the defendant's own testimony").

IT IS FINALLY ORDERED that judgment shall be entered in favor of the United States and against Defendant.

_____

UNITED STATES DISTRICT JUDGE